JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant, Bruce Sinclair, appeals from the judgment of the Cuyahoga County Court of Common Pleas, rendered after a jury verdict, finding him guilty of drug trafficking in an amount exceeding 100 grams, drug possession in an amount exceeding 100 grams and possession of criminal tools, and deeming him a major drug offender. For the reasons that follow, we affirm appellant's conviction but vacate part of his sentence.
 {¶ 2} Cleveland Police Officer Rochelle Waddell testified at trial that at approximately 7 p.m. on November 26, 2001, she and her partner, Officer Robert Goines, were traveling on East 153rd in a zone car on patrol. As they passed the intersection of East 153rd and Naples, they saw a car with no lights on coming down Naples. When the car turned onto East 153rd and passed the zone car, the officers saw two men in the front seat of the car. They also noticed that the driver's door window and the driver's side passenger window were broken out and taped and there were still shards of glass in the back window.
 {¶ 3} Thinking the vehicle may have been stolen, the officers radioed its license plate number to a police dispatcher and then stopped the car. Before the officers could get out of their car, however, the passenger door of the stopped car opened and one of the males began running away. Goines jumped out of the zone car and began chasing the fleeing male.
 {¶ 4} Meanwhile, Waddell ordered the driver, later determined to be appellant, out of the car, patted him down, handcuffed him and put him in the back of the zone car. Waddell did not find any money or drugs on appellant when he was arrested.
 {¶ 5} Goines testified that as he was chasing the passenger, he saw him reach into his pants pocket and pull out a bag "which looked like it was full of white stuff." As Goines reached the passenger and grabbed him, the male threw the bag away and both men fell down.
 {¶ 6} Waddell's and Goines' supervisor, Sergeant George Seroka, testified that he happened to be parked in the vicinity when he heard the radio dispatch regarding the possible stolen car. Intending to assist Waddell and Goines, he turned on the headlights of his car and saw Goines chasing the fleeing male and then tackle him. Seroka jumped out of his car and assisted in handcuffing the male, who was later determined to be Reginald Spencer.
 {¶ 7} Goines searched the area and found the article that Spencer had thrown away: a ziplock plastic bag containing 108 grams of crack cocaine. He also found three small baggies of crack cocaine, one baggie of marijuana, a pager and $652 wadded up in Spencer's pocket.
 {¶ 8} Goines testified that appellant and Spencer got into an argument as they sat together in the back of the zone car after their arrests. According to Goines, Spencer apparently made a comment to appellant, who responded, "Fuck you, nig, I'm just giving you ass a ride."
 {¶ 9} Spencer testified that he was 20 years old and had dropped out of high school in the eleventh grade. According to Spencer, he had been using crack and marijuana since 2000 and another crack user introduced him to appellant approximately two months prior to the events of November 26, 2001.
 {¶ 10} Spencer testified that he sometimes did odd jobs for his grandfather in 2001 to earn money to buy crack. After meeting appellant, however, he and appellant reached an agreement whereby appellant would "front" Spencer an "eight ball" (approximately three grams) of crack and Spencer would smoke some of the crack and then sell the rest. About every three days, Spencer would pay appellant, who would then "front" him another eight ball. Spencer testified that appellant would periodically go to Las Vegas to get drugs.
 {¶ 11} According to Spencer, on November 26, 2001, as he was leaving his aunt's house, he saw appellant driving through the neighborhood and appellant offered to give him a ride. After they turned onto East 153rd, a police car turned around and began following them. When the police car turned on its lights, appellant told Spencer that he could not go to jail because he had a wife and children. He reached under the driver's seat and pulled out a ziplock bag and two baggies, gave the bags to Spencer and told him to run because he was a faster runner and could get away. Spencer put the bags in his pocket and, when appellant stopped the car, jumped out and ran. Spencer admitted that he had a bag of marijuana and a bag of crack cocaine in his pocket before appellant gave him the other drugs. Spencer also testified that when he was sitting in the back of the zone car with appellant, he asked appellant "if he was going to let me take the fall for that stuff."
 {¶ 12} When he was arrested, Spencer told the officers that his name was Reginald Glenn. Cleveland Police Detective Gloria Santiago testified that as she was reviewing the list of drug arrests made on November 26, 2001, she recognized the name "Reginald Glenn" as someone she had previously arrested. When she went to see Glenn in jail, however, she realized that the male was not the Reginald Glenn she had arrested. Spencer then informed Santiago that his name was Reginald Spencer, not Reginald Glenn. Santiago subsequently took a written statement from Spencer regarding the events of November 26, 2001. In his statement, Spencer averred that appellant took the drugs that he handed him from the glove compartment of the car, rather than from under the seat. When questioned at trial about the discrepancy, Spencer testified that he thought Santiago was asking him about "secret compartments" in the car, not "about where he got it from at the time," and that he was sure that appellant reached under the seat for the drugs.
 {¶ 13} Spencer admitted that only several days before trial, he had pleaded guilty to four separate felony cases. He also admitted that in exchange for testifying against appellant, he had pleaded guilty to an amended indictment regarding the events of November 26, 2001, thereby substantially reducing his potential prison term. On cross-examination, he denied ever borrowing appellant's car. He also denied calling appellant on November 26, 2001 and asking him for a ride to his uncle's house. He further denied telling appellant, "I got warrants out for me, take off," when the police stopped the car or that appellant locked the car when Spencer told him that he was going to run. Finally, although Spencer admitted that he had been charged in four drug trafficking cases in the twelve months prior to November 26, 2001, he denied being a drug dealer.
 {¶ 14} Cleveland Police Officer Antonio Colon testified that on January 18, 2002, he and his trained dog searched appellant's car. According to Colon, the dog alerted to the scent of drugs at the driver's door handle, the rear passenger door on the driver's side, underneath the driver's seat and the dashboard of the car. Colon testified further that a manual search of the car produced three plastic baggies hidden behind the fold-up armrest in the back seat. One of the baggies subsequently tested positive for cocaine residue. The search also revealed a factory-installed compartment behind the glove compartment where appellant could have "easily put stuff." The search also produced a purchase agreement for the car that indicated that appellant and his girlfriend had purchased the car used in 2001.
 {¶ 15} On cross-examination, Colon admitted that it was impossible to determine whether the dog alerted to the scent of drugs because drugs had actually been in the car at some time or because another object or person had been in contact with drugs and then passed the scent to the car. Colon admitted further that he could not establish any time frame for when the drugs which gave off the scent to which the dog alerted were in the car.
 {¶ 16} After the trial court denied appellant's Crim.R. 29 motion for acquittal, appellant testified in his own defense. According to appellant, he had moved back to Cleveland from Las Vegas in September 2001 to care for his elderly mother. Appellant testified that he had worked as a cook at several facilities in the area, although he had quit his last job shortly before his arrest.
 {¶ 17} Appellant testified that he had known Spencer his entire life because appellant's son was the same age as Spencer. According to appellant, after moving back from Las Vegas, he first saw Spencer again at the funeral of Spencer's grandfather at the end of September. Appellant testified that one week before his arrest, Spencer borrowed his car to take his girlfriend to a hotel.
 {¶ 18} Appellant testified that on November 26, 2001, Spencer called him and asked him for a ride to his uncle's house. According to appellant, when the police lights came on, Spencer told appellant, "Floor this mother-fucker because I got a warrant." Appellant told Spencer he could not do that because "Man, I have a family." Appellant testified that he pulled over and then locked the doors so Spencer could not get out. Spencer pulled the lock up, however, and started running away. Appellant testified that he did not know that Spencer had any outstanding warrants. He also testified that he did not reach under the seat or in the glove compartment to get drugs and did not give Spencer any drugs. Finally, appellant denied being a drug dealer or getting any drugs from Las Vegas.
 {¶ 19} The jury subsequently found appellant guilty of all three counts. The trial court sentenced appellant to ten years incarceration on counts one and two, drug trafficking and drug possession, and 11 months incarceration on count three, possession of criminal tools, the sentences to be served concurrently. In addition, the trial court ordered appellant to pay a fine of $10,000 on each of counts one and two and a $250 fine on count three.
 {¶ 20} Appellant timely appealed, raising four assignments of error for our review. For clarity, the assignments will be considered out of order.
 {¶ 21} In his second assignment of error, appellant challenges the sufficiency of the evidence to support his convictions. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met
 {¶ 22} its burden of production at trial. State v. Thompkins
(1997), 78 Ohio St.3d 380. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 23} Appellant was convicted of drug possession, drug trafficking and possession of criminal tools. R.C. 2925.11, regarding possession of drugs, provides that "no person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.03, regarding drug trafficking, provides that "no person shall knowingly * * * transport, deliver, prepare for distribution, or distribute a controlled substance * * *." R.C. 2923.24, regarding possession of criminal tools, provides that "no person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally." Thus, as appellant correctly points out, to sustain a conviction on each offense, the state had to produce sufficient evidence that the bag of cocaine thrown away by Spencer as he ran from the police belonged to appellant.
 {¶ 24} Appellant first argues that the evidence was insufficient because the evidence of the dog alerting to the scent of drugs in appellant's car was "highly speculative and suspect" because the state was unable to establish when the drugs that produced the scent were in the car. Appellant argues that the scent could have been left in the car by the person who owned the car before appellant bought it, by Spencer when he borrowed the car the week before the arrest or even at the time of appellant's arrest, when the police handled the ziplock bag of narcotics and then conducted an inventory search of the car. Therefore, appellant contends, because the state could not specify any time frame for when the drugs were in the car or who was present when the drugs were in the car, evidence that the police dog alerted to the scent of drugs was too speculative and suspect to have been relied upon by the jury. We disagree.
 {¶ 25} The fact that the dog alerted to the scent of drugs in the car was circumstantial evidence that drugs were present in appellant's car at some point in time. The state was not required to prove its entire case, however, i.e., that the bag Spencer threw away actually belonged to appellant, with Officer's Colon's testimony. Rather, Colon's testimony regarding the search of appellant's car by a trained dog was only one piece of evidence to be considered by the jury in conjunction with the other evidence produced by the state. Moreover, the weight of Colon's testimony, especially in light of his inability to establish exactly when the drugs were present in appellant's car, was for the jury to decide.
 {¶ 26} Appellant also challenges Spencer's testimony that appellant reached under the seat, pulled out a bag of drugs, gave it to Spencer and told him to run as "so lacking in credibility, it cannot possibly have been relied upon by the jury." Appellant argues that Spencer's testimony was highly unreliable, given the discrepancy between his written statement and his trial testimony about where appellant reached to obtain the drugs, and given the potential for a significant reduction in his prison sentence, pursuant to his agreement to testify against appellant. Finally, appellant notes that his testimony directly contradicted Spencer's. In light of these factors, appellant asserts that Spencer's testimony lacked the credibility necessary for the court to accept it as true. We disagree.
 {¶ 27} As set forth above, the test regarding the sufficiency of evidence is not whether the testimony is to be believed, but whether, if believed, the evidence would support a conviction. Here, Spencer testified that appellant reached under the seat, pulled out the ziplock bag of drugs and then handed it to him and told him to run. He testified further that he regularly bought drugs from appellant. This evidence, ifbelieved, was sufficient to demonstrate that appellant possessed and trafficked in drugs.
 {¶ 28} Appellant's second assignment of error is therefore overruled.
 {¶ 29} In his first assignment of error, appellant contends that his convictions were against the manifest weight of the evidence. A manifest weight of the evidence argument involves determining whether there exists a greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. Weight is not a matter of mathematics, but depends on its effect in inducing belief. Id.
 {¶ 30} When reviewing a claim that the judgment in a criminal case is against the manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra, citing State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 31} In challenging the weight of the evidence, appellant again argues that the circumstantial evidence that a scent of drugs was detected on the driver's side of the car is insufficient without a specified time period to demonstrate when the drugs were in the car. We have already disposed of this argument, however.
 {¶ 32} Appellant also argues that his convictions were against the weight of the evidence because Spencer's testimony, which the jury obviously believed, lacked credibility. Admittedly, in this case, the jury was required to resolve conflicts in the evidence by determining whether appellant or Spencer was more credible. Credibility is primarily for the trier of fact to determine, however, and a reviewing court will not substitute its judgment for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230.
 {¶ 33} Moreover, there is evidence in the record from which the jury could have concluded that appellant's testimony was not credible. Spencer forthrightly admitted that he used crack and that one of the small bags of crack and one of the bags of marijuana found on him when he was arrested belonged to him. Appellant, however, repeatedly denied that he used or sold drugs, even though three plastic baggies, one containing cocaine residue, were found stuffed behind the fold-up armrest in the backseat of his car and a hidden compartment was found behind the glove box in his car.
 {¶ 34} After reviewing the entire record, weighing the evidence and considering the credibility of the witnesses, we are not persuaded that the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's convictions must be reversed. Rather, the record reveals sufficient evidence from which the jury could have concluded, beyond a reasonable doubt that appellant was guilty of drug possession, drug trafficking and possession of criminal tools.
 {¶ 35} Appellant's first assignment of error is therefore overruled.
 {¶ 36} In his third assignment of error, appellant contends that the trial court erred in denying his motion to strike Officer Colon's testimony regarding the search of his car. Appellant contends that Colon's testimony was not relevant to any issues at trial and therefore was not admissible. He further contends that even if it were relevant, the prejudicial effect of the testimony outweighed its probative value and, therefore, it should not have been admitted.
 {¶ 37} Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 38} Generally, "all relevant evidence is admissible[.]" Evid.R. 402. Relevant evidence must be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or of misleading the jury." Evid.R. 403(A).
 {¶ 39} "When the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion." O'Brien v. Angley (1980),63 Ohio St.2d 159, 163. An abuse of discretion connotes more than error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 40} Appellant contends that because Colon could not establish a time frame for when the drugs that left the scent were in his car, evidence of a scent of drugs in the car does not make it more or less probable that the ziplock bag of crack cocaine belonged to him. Therefore, appellant contends, Colon's testimony was not relevant and should not have been admitted.
 {¶ 41} Contrary to appellant's argument, however, the fact that the scent of drugs was found in his car makes it more likely, although not conclusive, that the drugs belonged to him. Therefore, the testimony is relevant and admissible. Colon's inability to establish exactly when the scent was left in the car merely affects the probative value of the evidence, i.e., the weight the jury should give to the evidence, not its admissibility.
 {¶ 42} Appellant also argues, however, that even if the evidence were relevant, it should have been excluded because its "inherent prejudice" outweighed its probative value. Appellant contends that the evidence was inherently prejudicial because the jury could have been "misled" into believing that he "must have had some relation" to the bag of cocaine merely because the scent of narcotics was found on the driver's door handle of the car. Once again, we disagree.
 {¶ 43} Officer Colon admitted that the scent of drugs can be passed
 {¶ 44} from object to object and, therefore, the jury was aware that simply because the scent was detected in appellant's car did not mean that drugs were ever actually in the car. Significantly, however, Colon also testified that if the scent had been passed to the car through such pass-through contact, the scent would not have been strong enough for a dog to detect two months after appellant's arrest.
 {¶ 45} In light of this testimony, we cannot find that Colon's inability to establish a time frame when the scent of drugs was left in appellant's car made his testimony regarding the scent of drugs in appellant's car inherently prejudicial. Accordingly, the trial court did not abuse its discretion in denying appellant's motion to strike Officer Colon's testimony.
 {¶ 46} Appellant's third assignment of error is therefore overruled.
 {¶ 47} In his fourth assignment of error, appellant contends that the trial court erred in ordering him to pay a $10,000 fine on each of counts one and two, a $250 fine on count three, court costs and assigned trial counsel's fee.
 {¶ 48} R.C. 2929.18(B)(1) provides:
 {¶ 49} "For a first, second or third degree felony violation of any provision of Chapter 2925 * * * of the Revised Code, the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but nor more than, the maximum statutory fine amount authorized for the level of the offense * * *. If an offender alleges inan affidavit filed with the court prior to sentencing that the offenderis indigent and unable to pay the mandatory fine and if the courtdetermines the offender is an indigent person and is unable to pay themandatory fine described in this division, the court shall not impose themandatory fine upon the offender." (Emphasis added.)
 {¶ 50} Appellant filed an affidavit of indigency with the trial court and the trial court appointed counsel, who represented appellant throughout trial. The record reflects that appellant's family hired an attorney to represent him at sentencing. It appears from the record that the trial court believed that appellant had lost his indigent status because his family retained counsel for the sentencing hearing. Appellant's retained counsel informed the court at the sentencing hearing, however, that appellant's family did not have the financial ability to hire her for trial and, furthermore, did not have the financial ability to pay any assessed fines. Retained counsel also informed the court that appellant did not have the ability to pay any fines, just as he did not have the ability to retain counsel for trial. Nevertheless, the trial court ordered that appellant pay the fines and assessed repayment of assigned trial counsel's fee. Curiously, however, the trial court subsequently granted appellant's motion for appointment of appellate counsel.
 {¶ 51} On this record, we hold that the trial court erred in ordering appellant to pay the fines, court costs and assigned counsel's fee. It is apparent that appellant is indigent and unable to pay any fines. Accordingly, that portion of the trial court's sentencing order ordering appellant to pay a fine of $10,000 on each of counts one and two, a $250 fine on count three, court costs and costs of assigned counsel is vacated.
 {¶ 52} Appellant's fourth assignment of error is sustained.
Affirmed in part and vacated in part.
SEAN C. GALLAGHER, J., CONCURS.
 JAMES J. SWEENEY, P.J., CONCURS WITH SEPARATE CONCURRING OPINION.